Robert M. KNUTH, on behalf of himself and all others similarly situated

v.

ERIE–CRAWFORD DAIRY COOPERA-TIVE ASSOCIATION et al.,

Robert M. Knuth, Appellant.

No. 16656.

United States Court of Appeals Third Circuit.

Argued Dec. 8, 1967.

Decided May 3, 1968.

Rehearing Denied June 20, 1968.

Paul A. Simmons, Tempest & Simmons, Monongahela, Pa., for appellant.

Thomas W. Pomeroy, Jr., Kirkpatrick, Pomeroy, Lockhart & Johnson, Pittsburgh, Pa. (W. Walter Braham, Jr., Harry W. Turner, Pittsburgh, Pa., on the brief), for appellees, Erie-Crawford Dairy Cooperative, Dairymen's Cooperative Sales Assn., and others.

Frank L. Seamans, Robert C. McCartney, Edward G. O'Connor, Eckert, Seamans & Cherin, Pittsburgh, Pa., for appellees, Sealtest Foods Div. of Nat. Dairy Products Corp. and Akron Milk Producers Cooperative.

Clyde W. Armstrong, Victor P. Gottschall, Thorp, Reed & Armstrong, Pittsburgh, Pa., for appellees, Golden Glow Dairy, Yaple's Dairy, Inc., Schruer's Dairy, Golden Crown Dairy and Erie Dairy Land, Inc.

Willis F. Daniels, Daniels & Swope, Harrisburg, Pa., for appellee, Sterling Milk, Inc.

William W. Knox, Knox, Pearson & McLaughlin, Erie, Pa., for appellee, H. Robert Fischer.

Nathan Routman, Routman, Moore & Goldstone, Sharon, Pa., for appellee, Klein Dairy.

Henry E. Rea, Jr., Brandt, Riester, Brandt & Malone, Pittsburgh, Pa., for appellee, Schneider's Dairy.

Errol Fullerton, New Castle, Pa., for appellee, Linger Light Dairy.

Before BIGGS, KALODNER, and SEITZ, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

This is an appeal from a judgment dismissing an amended complaint with prejudice for failure to state a claim.[1]

---

1. Plaintiff does not challenge the dismissal of the Clayton Act claim (Count II), consequently this decision does not affect the district court's disposition of that count.

A state action claim (Count III) based on pendent jurisdiction was dismissed below. The correctness of that action is considered later herein.

Plaintiff's class action claim (Count I) asserted under Section 4 of the Clayton Act,[2] alleged violations of Sections 1 and 2 of the Sherman Act.[3] The class represented by appellant allegedly consisted of approximately 1,200 Pennsylvania farmer-producers ("producers") who furnished milk for the period designated to one of the defendants Erie-Crawford,[4] a Pennsylvania cooperative marketing organization. Erie-Crawford in turn sold the milk to certain of the other defendants ("processors") who processed it and sold it to retailers as bottled milk or dairy products.

The appellant and the other Pennsylvania producers he purports to represent furnished raw milk to their marketing cooperative, Erie-Crawford, under a contract by which the net proceeds of all money received by Erie-Crawford was to be paid to them as their interests appeared. This milk was sold to the processors at prices per hundredweight fixed by the Pennsylvania Milk Control Commission under statutory authority.[5] Erie-Crawford also received milk from producers outside of Pennsylvania. This milk was shipped into Pennsylvania and sold to the processors at prices per hundredweight which were less than the fixed selling price of the Pennsylvania produced milk. All proceeds received by Erie-Crawford from the sale of milk were placed in a market-wide milk price pool. From this pool, all farmer-producers were paid an equal net amount per hundredweight of milk supplied regardless of the amounts received for any particular farmer-producer's milk.

The best analysis we can make of Count I of plaintiff's amended complaint reveals that three courses of conduct involving defendants are alleged to constitute violations of Sections 1 and 2 of the Sherman Act. We first state them in summary fashion and then treat them seriatim.

Plaintiff alleges a conspiracy by all appellees:

I. to fix the price of milk shipped into Pennsylvania by granting rebates to the processors on the milk produced in Pennsylvania and purchased by them from Erie-Crawford;

II. to suppress and eliminate competition in the sale of milk and other dairy products as evidenced by the Erie-Crawford directors' action in causing Pennsylvania milk to be shipped into Ohio and other states and then reshipped to Pennsylvania so that it can be sold to the processors at a price below the minimum price fixed by the Pennsylvania Milk Control Commission;

III. to suppress and eliminate competition in the sale of milk and other dairy products by the processors' concerted refusal to deal directly with the producers, and also by their refusal to buy milk from any source other than those sources approved by Erie-Crawford.

The damages from the foregoing conduct are alleged to be an amount equal to the rebates plus other specific economic loss.

2. 15 U.S.C.A. § 15, reads as follows: "Section 4. Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may * * * recover threefold the damages by him sustained * * *."

3. 15 U.S.C.A. § 1 reads in pertinent part: "Section 1. Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States * * * is declared to be illegal * * *." 15 U.S.C.A. § 2 reads in pertinent part: "Section 2. Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States * * * shall be deemed guilty of a misdemeanor * * *."

4. Also named as defendants were Erie-Crawford's officers, directors and attorney and other cooperatives.

5. 31 Purdon's Pa.Stat.Ann. § 700j-101 et seq. We note that the law creating the Commission was declared constitutional in Milk Control Board v. Eisenberg Farm Products, 306 U.S. 346, 59 S.Ct. 528, 83 L.Ed. 752 (1939).

Since Count I was dismissed with prejudice for failure to state a claim, we must take the material allegations of the complaint to be true. Doubts should be resolved in favor of the position which will uphold the pleading as such. Decisions of the United States Supreme Court indicate that we should be extremely liberal in construing antitrust complaints. See Radiant Burners, Inc. v. Peoples Gas, Light & Coke Co., 364 U.S. 656, 660, 81 S.Ct. 365, 5 L.Ed.2d 358 (1961); Radovich v. National Football League, 352 U.S. 445, 453–454, 77 S.Ct. 390, 1 L.Ed.2d 456 (1957); and United States v. Employing Plasterers' Ass'n, 347 U.S. 186, 188–189, 74 S.Ct. 452, 98 L. Ed. 618 (1954). Indeed, in the Employing Plasterers' case, the Supreme Court made it clear that, "whether [the] charges be called 'allegations of fact' or 'mere conclusions of the pleader,' * * * they must be taken into account in deciding" whether a claim for relief is stated. Above at p. 188, 74 S.Ct. at p. 454. And they further said that,

" * * * [W]here a bona fide complaint is filed that charges every element necessary to recover, summary dismissal of a civil case for failure to set out evidential facts can seldom be justified. If a party needs more facts, it has a right to call for them under Rule 12(e) of the Federal Rules of Civil Procedure. And any time a claim is frivolous an expensive full dress trial can be avoided by invoking the summary judgment procedure under Rule 56." Above at p. 189, 74 S.Ct. at p. 454.

The "liberal" approach to the consideration of antitrust complaints is important because inherent in such an action is the fact that all the details and specific facts relied upon cannot properly be set forth as part of the pleadings. See Noerr Motor Freight, Inc. v. Eastern R. R. Presidents Conference, 113 F. Supp. 737 (E.D.Pa.1953).[6] In the use of Section 4 of the Clayton Act, the courts have attributed to a private litigant the role of an ancillary force to supplement governmental enforcement of the antitrust laws. See United States v. Borden Co., 347 U.S. 514, 74 S.Ct. 703, 98 L.Ed. 903 (1954). All the law requires to state a private treble damage action claim are allegations adequate to show a violation of the antitrust acts and that plaintiff has been damaged thereby. Radiant Burners, Inc. v. Peoples Gas, Light & Coke Co., above.

We also take occasion to note that Section 1 of the Capper-Volstead Act[7] does not authorize combinations or conspiracies between cooperatives and others in restraint of trade. United States v. Borden Co., 308 U.S. 188, 60 S. Ct. 182, 84 L.Ed. 181 (1939). Indeed, such a cooperative may even be liable under the Sherman Act without proof of involvement of non-cooperatives if the activity under attack is predatory. Maryland and Virginia Milk Producers Ass'n, Inc. v. United States, 362 U.S. 458, 80 S.Ct. 847, 4 L.Ed.2d 880 (1960).

We turn now, with the aforementioned principles in mind, to a seriatim analysis of the three courses of conduct which we infer from the amended complaint are the alleged violations of the Sherman Act.

## I. Rebates

Plaintiff claims that the defendants conspired to fix the price of milk shipped into Pennsylvania by the use of rebates to the processors on milk produced in Pennsylvania and purchased by them from Erie-Crawford. The date of the conspiracy is alleged, plus an allegation concerning defendants' knowledge of the price set for milk by the Pennsylvania Milk Control Commission. Rebates given solely on Pennsylvania milk allegedly result in the suppression and elimi-

---

6. The ruling in Black and Yates v. Mahogany Ass'n, 129 F.2d 217, 148 A.L.R. 841 (3rd Cir. 1942), that an anti-trust complaint to be sufficient, must allege "some facts," has no decisive pertinency to this amended complaint.

7. 7 U.S.C.A. § 291.

nation of competition by preventing the free flow of milk in interstate commerce from sources outside the State of Pennsylvania into the State of Pennsylvania. The object of this alleged combination and conspiracy was to accomplish the raising, fixing, controlling, setting, stabilizing and affecting the price of milk shipped in interstate commerce.

As we read the opinion of the district court it held that the rebate allegation involved solely a question of state law, i. e., whether the rebate practice was contrary to the Pennsylvania Milk Control Act. But it does not matter whether the practice was legal or illegal under state law if it was prohibited action under the Sherman Act. Certainly, it is not suggested that the rebate practice is required by state law. Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). The issue then is whether the allegations sufficiently show a violation of the Sherman Act to withstand a motion to dismiss.

Plaintiff's allegation of a conspiracy to fix prices in the interstate transportation of milk by the use of rebates states the elements necessary to show a violation of Section 1 of the Sherman Act. The payment of rebates to processors who purchase Pennsylvania produced milk, without other evidence, would tend to encourage such processors to purchase more Pennsylvania milk in proportion to out-of-state milk than they would purchase without such rebates. As a consequence of such practice one would expect a reduction in the amount of milk being shipped into Pennsylvania. We think these are permissible inferences, at least at the "complaint" stage of this proceeding.

Damage to plaintiff is alleged to be an amount equal to the rebates paid to the processors. Such rebates directly affected plaintiff because the contract under which he furnished milk to his cooperative provided that his milk was to be disposed of by Erie-Crawford to the best possible economic advantage and the net proceeds of all money received by Erie-Crawford were to be paid to him as

his interest might appear. Since the rebate payments reduced the amount Erie-Crawford had available to pay the producers, plaintiff's share of such amount was necessarily reduced.

We conclude that for pleading purposes at least, plaintiff has alleged injury in his business or property within the meaning of Section 4 of the Clayton Act. Cf. Chattanooga Foundry and Pipe Works v. City of Atlanta, 203 U.S. 390, 395–396, 27 S.Ct. 65, 51 L.Ed. 241 (1906); and see Poller v. Columbia Broadcasting System, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962).

Having alleged a conspiracy which affects interstate commerce and consequent damage, the plaintiff has stated a claim under Section 1 of the Sherman Act. The claim of a violation of Section 2 is also sufficient for pleading purposes since the tendency of the conspiracy alleged was to monopolize a part of the trade or commerce among the several states. We think that plaintiff is entitled to an appropriate opportunity to prove these charges.

II. *Interstate Shipment of Pennsylvania Milk*

As we read this claim asserted under Section 1 of the Sherman Act, Erie-Crawford and the other defendants are alleged to have conspired to suppress and eliminate competition in the sale of milk and other dairy products. The practice allegedly employed to implement the conspiracy was to ship Pennsylvania milk into certain surrounding states where milk assembly plants were located to receive milk produced in those states. Such milk was then shipped to the processors in Pennsylvania. By this roundabout way, the milk was allegedly sold to the processors at prices below those fixed by the Pennsylvania Milk Control law.

The district court judge felt, once again, that plaintiff was really alleging a violation of the Pennsylvania Milk Control Act, and was erroneously equating that charge with a violation of the Sherman Act. As we have previously noted herein, the decision as to the effect of

state law on the practice alleged is not dispositive of the federal claim. Accord, Northern Securities Co. v. United States, 193 U.S. 197, 344–345, 24 S.Ct. 436, 48 L.Ed. 679 (1904).

The district court also found, despite the allegations of the amended complaint to the contrary, that the shipment of milk out of and then back into Pennsylvania promoted, rather than restrained interstate commerce. First, we think it was inappropriate to make such a finding on a motion to dismiss. Moreover, while such activity may increase commerce, the Sherman Act does more than prohibit the reduction of interstate commerce. It also proscribes conspiracies in "restraint of trade or commerce." By use of the term restraint of trade, the Sherman Act forbids certain restraints on competition. See William Goldman Theatres v. Loew's Inc., 150 F.2d 738 (3rd Cir. 1945).

Plaintiff has alleged a conspiracy which restrains competition in the sale of milk. He, therefore, has alleged a violation of Section 1 of the Sherman Act, since a restraint of competition, as a matter of law, necessarily restrains commerce as that term is used in the Act. Since a conspiracy to suppress and eliminate competition tends to monopolize a portion of trade or commerce among the states, plaintiff has also set forth sufficient allegations to charge a violation of Section 2 of the Sherman Act.

Plaintiff has further alleged that the above conduct has caused specific economic injury to his business, which in turn, has prevented him from competing with Erie-Crawford in the marketing of milk. Such allegations are, for pleading purposes, sufficient to meet the requirements of Section 4 of the Clayton Act. We find this claim sufficient to withstand a motion to dismiss.

III. *Boycott*

■ Plaintiff alleges that the defendant processors have, pursuant to a conspiracy with Erie-Crawford and the directors, restrained interstate commerce by refusing to purchase milk from any source other than those approved by Erie-Crawford. In furtherance of this conspiracy, the processors refuse to deal directly with the producers, thereby forcing the producers to furnish their milk to Erie-Crawford for disposition.

The district court judge, in his disposition of the complaint, did not discuss this allegation. It is our opinion that plaintiff has here stated the elements necessary to set forth a cause of action under Section 1 of the Sherman Act.

The fact that the "boycott" allegations relate only to activities of the Pennsylvania milk industry occurring wholly within the State of Pennsylvania is immaterial. If either the source or the application of the restraint is intrastate, the question is still whether its necessary effect is to stifle or restrain trade or commerce among the States. "If it is interstate commerce that feels the pinch, it does not matter how local the operation which applies the squeeze." United States v. Women's Sportswear Mfg. Ass'n, 336 U.S. 460, 464, 69 S.Ct. 714, 716, 93 L.Ed. 805 (1949).

Having alleged a conspiracy to boycott certain milk produced in Pennsylvania, we believe plaintiff has stated a claim under Section 1 of the Sherman Act. Since such conduct may tend to monopolize a part of the trade or commerce among the several states, appellant has also stated a claim under Section 2 of the Sherman Act.

■ Plaintiff alleges he is directly damaged by the boycott because it forces him to furnish milk to Erie-Crawford and restricts the possibility of disposing of it directly in the open market. Since Erie-Crawford grants rebates to processors purchasing Pennsylvania milk, the amount which plaintiff receives from Erie-Crawford is less than he believes he could receive on the open market sale of such milk. Although the evidence may ultimately show that appellant's damage is not a direct result of the alleged boycott, we believe that for pleading purposes he has stated a damage claim under Section 4 of the Clayton Act. Compare, Roseland v. Phister Mfg. Co., 125 F.2d 417, 139 A.L.R. 1013 (7th Cir. 1942).

We therefore conclude that the district court should not have dismissed Count I of the amended complaint with prejudice for failure to state a claim.[8] We might add that if plaintiff feels our construction of the claims asserted under Count I does not encompass all those intended, he should apply to the district court for leave to amend to assert them.

We recognize that the confused and obscure quality of many of the allegations of the complaint may understandably have influenced the district court's decision, particularly since it had granted leave to file an amended complaint. But the subject matter of the lawsuit is too important to allow such prejudicial consequences to flow from imprecision in pleadings. We note that the record shows that the defendants also filed an alternative motion below for a more definite statement. It was not reached by the district court. We therefore are not called upon to express an opinion as to the merits of that motion.

Count III of the amended complaint alleges that defendants violated Pennsylvania law by the fraudulent conversion of plaintiff's money, by tortious interference with plaintiff's advantageous business relations and by violations of the Pennsylvania Milk Control Act. Jurisdiction is alleged to be pendent to the antitrust violations asserted in Count I. The district court dismissed Count III on the grounds that the federal claims were insubstantial; that the subject matter did not bring the Count within the court's pendent jurisdiction and; that if it did, the Count should nevertheless be dismissed pursuant to an exercise of its sound discretion.

In 1966 the United States Supreme Court illuminated the pendent jurisdiction concept by its opinion in United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218. In liberalizing the concept of pendent jurisdiction, it said:

"Pendent jurisdiction, in the sense of judicial *power*, exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority * * *,'" U.S.Const., Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.' The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. [case cited] The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole." 383 U.S. at 725, 86 S.Ct. at 1138, footnotes omitted.

■ Keeping in mind that the district court decided this matter on a motion to dismiss the amended complaint, we must first consider the allegations to see whether the court below was correct in concluding that pendent jurisdiction power was absent. As the court noted in *Gibbs*, this matter is ordinarily resolved on the pleadings. We have decided herein that Count I sets forth a claim under the Sherman Act. Consequently, we must disagree with the district court's holding that no substantial federal claim is asserted.

■ Nor, at this stage, can we agree with the district court that the subject matter of the federal and state claims do

8. The defendant Sterling Milk, Inc. seeks to have the dismissal upheld as to it on the ground that no specific damages are claimed from it in the amended complaint. We think the resolution of this contention at this stage of the proceedings would be premature.

not bring this Count within the court's pendent jurisdiction. The court below seemed to believe that in order to invoke pendent jurisdiction both the federal and state claims must derive from a common nucleus of operative facts and an invaded right which is common to both. We think this is too narrow an approach to the issue, particularly in the light of the discussion in the *Gibbs* case. A right allegedly violated in a Sherman Act case and a right allegedly invaded under the common law may well have a common factual basis although the source of the "right" is different. Such a case is not automatically inappropriate for determination in a single trial. Certainly the fact that different remedies may be involved in disposing of the claims does not alter this conclusion.

■ Since we think the district court had the power to entertain Count III under its pendent jurisdiction, we next consider whether, in the exercise of a sound discretion as is permitted by *Gibbs*, it was nevertheless justified in dismissing the claim. We shall consider the reasons given by the district court and our evaluations thereof.

1. The district court "found" that the federal claim, to which the state claim was sought to be joined, was insubstantial. We have of course now held to the contrary.

2. The court's second ground for its decision was the fact that the allegations of Count III were based solely on a state claim asserted against certain non-diversity defendants. We fail to see how this ground is, in and of itself, sufficient to justify a refusal to exercise pendent jurisdiction. The situation mentioned is quite common in pendent jurisdiction matters and is, indeed, the reason why pendent jurisdiction is invoked.

3. The district court "determined," apparently from a reading of the amended complaint, that the state claim actually constituted the basis of the claims in all the Counts. The district court "found" that it was "clear" that

the supposed federal questions were "appendages or vehicles employed to bring the state claim under the jurisdiction of a federal court." While we have no doubt that under the *Gibbs* case the propriety of asserting pendent jurisdiction remains open throughout the litigation, we think that the "findings" here made solely on the basis of the amended complaint were unwarranted.

We conclude that the judgment granting the motion to dismiss Count III must be reversed. In view of the posture of the case before the district court, we think the court lacked an acceptable basis for exercising its discretion to refuse to entertain the pendent jurisdiction claim. We emphasize that the various factors relevant to the exercise of discretion with respect to Count III will continue to be appropriate matters for consideration by the district court. United Mine Workers v. Gibbs, above.

■ Finally, we consider the challenge to the judgment of the district court dismissing the amended complaint insofar as it attempted to state a class action.

We are met at the outset by defendants' contention that the district court's class action ruling is not before this court for decision because no appeal was taken from its dismissal. Defendants contend that plaintiff is the only one who filed a notice of appeal, and he appealed only as an individual and not in his capacity as representative of the alleged class.

A portion of the caption of the notice of appeal reads as follows:

"Robert M. Knuth, on behalf of himself and all others similarly situated, Plaintiffs * * *."

The body of the notice then recites in part:

"Take Notice that Robert M. Knuth, plaintiff above named, does hereby appeal * * * from the judgment * * *." [He then refers to all three counts of the amended complaint.]

■ We think a fair reading of the caption and body of the Notice of Appeal conveys the information that plaintiff was appealing all the rulings below, which included the class action ruling. Liberality of interpretation in such a matter is most desirable. Cf. Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed. 2d 222 (1962); Donovan v. Esso Shipping Co., 259 F.2d 65 (3rd Cir. 1958).

We come then to the correctness of the district court's dismissal of the class action.

■ In granting the motion to dismiss the amended complaint insofar as it purported to assert a class action, the district court relied on the following analysis:

> "Of the 56 farmer-producers listed in Exhibit A, 15 subsequently filed affidavits withdrawing from the suit, and 83 other farmer-producers filed affidavits averring that they were members and stockholders of Erie-Crawford and did not wish to be represented by the plaintiff. The Ohio and New York farmer-members seem to be totally ignored (see f.n. 3, supra). Thus, considerable doubt is cast upon plaintiff's claim to represent the interests of the alleged spurious class, whether that class is 1200 or 56 Pennsylvania farmer-producers. Since we think it appears that plaintiff inadequately represents the class, we are constrained to follow the ruling of this District Court in the *Hayes* case and grant the motion to dismiss insofar as the Amended Complaint purports to state a class action."

We interpret the district court's language to mean that because 98 Pennsylvania farmer-producers filed affidavits either withdrawing from the suit or indicating that they did not want to be represented by plaintiff, sufficient doubt was thereby thrown on plaintiff's class claim to justify its denial at that point,

and that was so regardless of the size of the class.

Plaintiff sought to represent a class consisting of approximately 1200 Pennsylvania producers. The court therefore had expressions from only a small percentage of the alleged total class. To the extent the decision as to the right to maintain this class action involved "numbers," the district court, in our view, had an inadequate factual basis for its conclusion. We think the use of the procedure provided by new F.R.Civ.P. 23(c) would have been more likely to have provided trustworthy evidence for deciding whether, numberwise at least, the plaintiff could fairly and adequately protect the interests of the class. That rule calls for notice to the members and gives them an opportunity to decide whether or not they want to be included in the lawsuit. While the new rule was in effect at the time this issue was decided by the district court, it does not appear to have been considered. We think its use would be entirely feasible and would work no injustice.[9]

The district court, in granting the motion, also indicated that it was relying to some extent upon the fact that another judge in that district had by order dismissed the class action aspect of a related anti-trust action.[10] The district court in *Hayes* disposed of the matter by an order which did not disclose the precise basis of its decision, and thus it is not particularly helpful here. We note further that an appeal from that order was dismissed by this court on motion. An examination of the grounds of the motion reveals that they related solely to jurisdictional objections. Thus, the merits of the class action aspect of the decision in the *Hayes* case were not reached by this court.

We therefore reverse the class action judgment without prejudice so that the Rule 23(c) procedure may be followed. The determination as to whether a class action is properly involved, and if so, the

9. See Order, 383 U.S. 1031 (1966).

10. Hayes v. Sealtest Foods, C.A. No. 65-1072.

ambit of the class, can then be made in light of the more fully developed facts. Compare Pennsylvania Co. for Insurances on Lives and Granting Annuities v. Deckert, 123 F.2d 979 (3rd Cir. 1941). The Supreme Court of the United States adopted this procedure with respect to the new Intervention Rule (Rule 24). Cascade Nat. Gas Corp. v. El Paso Nat. Gas. Co., 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967). We think the *Cascade* approach is also appropriate here.

The judgment of the district court as to Counts I and III will be reversed and the matter remanded for proceedings consistent herewith.

KALODNER, Circuit Judge (dissenting).

I would affirm the March 30, 1967 Order of the District Court dismissing Counts I and II of the appellants' Complaint for failure to state claims upon which relief can be granted, and dismissing Count III of the Complaint, without prejudice. I would do so for the reasons so well stated by District Judge Marsh in the Opinion which accompanied his stated Order.

This too must be said. Count III alleges conduct on the parts of the defendants in violation of the "Statutory and Common Law of Pennsylvania", and jurisdiction is alleged to be *pendent* to the antitrust violations asserted in Counts I and II. The District Court dismissed these two counts on the ground that they failed to state a cause of action, and further dismissed Count III on the grounds that pendent jurisdiction did not exist for that reason, and that, assuming the contrary, "consideration of it [Count III] should be refused in a proper exercise of judicial discretion." I can discern no basis for a holding that the District Court abused its discretion under the existing circumstances.

## ON PETITION FOR REHEARING

Before HASTIE, Chief Judge, and McLAUGHLIN, KALODNER, FREEDMAN, SEITZ and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

This is a petition for rehearing in banc on an opinion of this court dated May 3, 1968.

We decided, inter alia, that the district court erred in dismissing the class action aspects of the amended complaint. We reversed without prejudice and ordered the district court to use the procedure provided by new F.R.Civ.P. 23(c). It was felt that this procedure was more likely to produce trustworthy evidence for the district court to use in deciding whether, "numberwise at least," plaintiff could fairly and adequately protect the interest of the class. Petitioner asserts that we erred in ordering the district court to apply the provisions of 23(c) to determine whether plaintiff fulfilled the 23(a)(4) requirement that "the representative parties will fairly and adequately protect the interests of the class." Petitioner further requests that if rehearing is not granted, the question of whether the inquiry into adequacy of representation is to be made under 23(c)(2) or 23(d)(2) should be clarified. While we deny rehearing in banc, we do agree that clarification of the class action aspect of the opinion is appropriate.

At the outset we reaffirm our belief that the use of F.R.Civ.P. 23, as amended Feb. 28, 1966, eff. July 1, 1966, is entirely feasible and will work no injustice in this case. We wish to make it perfectly clear that we were not finally deciding the "class action" issue. Thus, we direct that the district court's judgment dismissing the class action aspects of this case be vacated rather than reversed.

The district court will, at the appropriate time, decide the issue as to whether the action may be maintained as a class action. Consequently, our opinion reference to 23(c) should not be taken as an implied judgment that the action is maintainable under 23(b)(3). Nor was that language intended to be understood as precluding the use of some other notice procedure (e. g., 23(d)) to assist

**430**

the district court in determining whether, numberwise, the plaintiff could fairly and adequately protect the interests of the class.

The petition for rehearing will be denied.

GERALD McLAUGHLIN, Circuit Judge, votes to deny the petition for rehearing.

KALODNER, Circuit Judge, would grant the petition for rehearing.