**EASTCOAST EQUIPMENT COMPANY,**
**v.**
**HARNISCHFEGER CORPORATION.**
Civ. A. No. 69–2507.

United States District Court,
E. D. Pennsylvania.
Jan. 19, 1973.

Harry Norman Ball, and H. Donald Busch, Philadelphia, Pa., for plaintiff.

Philip M. Hammett, of Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendant.

## FINDINGS OF FACT, DISCUSSION AND CONCLUSIONS OF LAW

CLIFFORD SCOTT GREEN, District Judge.

Presently before the court is plaintiff's motion to enjoin defendant from terminating plaintiff as the Northern New Jersey dealer of defendant Harnischfeger Corporation. We have extended to the parties an opportunity to introduce all evidence relevant to injunctive relief, and accordingly now after full hearing, make the following:

### FINDINGS OF FACT

1. Plaintiff is a New Jersey corporation having its principal place of business at U. S. Route 22, Mountainside, New Jersey.

2. Plaintiff is engaged in the business of selling, servicing, and renting new and used heavy construction equipment, engines and parts. Plaintiff, at various times, has been a dealer for products manufactured by Harnischfeger Corporation, the defendant herein, as well as Allis-Chalmers, Baldwin-Lima-Hamilton, LaCrosse Manufacturing Company, Jaeger Machinery Company, Poclain and others.

3. Defendant is a Wisconsin corporation with its principal place of business at West Milwaukee, Wisconsin.

4. Defendant transacts business in this district at Suburban Station Building, Philadelphia, Pennsylvania.

5. Defendant is a manufacturer of, *inter alia*, heavy construction equipment including cable power cranes and shovels and hydraulic cranes and excavators ("P & H" Products).

6. In April of 1963, defendant appointed plaintiff as its dealer for "P & H" Equipment in Northern New Jersey counties and by subsequent agreement the territory of said dealership was extended to two counties in New York state, namely, Rockland and Orange. The most recent dealer agreement entered into between the parties is dated February 6, 1967, and includes the following provision entitled "Duration of Agreement":

"This agreement shall be in force for a term of one year from the date of execution and, unless terminated as hereinafter provided, shall automatically renew itself for successive one-year periods. This agreement may be terminated by either party at any time by giving thirty (30) days' notice in writing to the other by registered mail of its intention to terminate, provided that if this agreement is terminated by either party because of failure or neglect to perform or because of any other breach of this contract by such party, then upon notice of termination for such cause such termination shall be effective immedi-

ately upon the receipt of such notice by registered mail."

7. Under date of September 4, 1969, defendant sent plaintiff a notice of intention to terminate plaintiff's dealer agreement effective October 31, 1969.

8. Upon receipt of the termination notice, certain meetings took place between representatives of plaintiff and defendant and when the dispute between the parties was not resolved, plaintiff filed this suit on October 24, 1969, invoking the jurisdiction of this court under 15 U.S.C. §§ 1 and 2 and 28 U.S.C. § 1332.

9. On October 27, 1969, defendant rescinded its notice of termination and plaintiff accepted the rescission on or about October 31, 1969, and the parties continued to transact business, without interruption, pursuant to the aforesaid agreement of February 6, 1967.

10. In December 1971, defendant mailed to plaintiff for execution a proposed new dealer agreement providing terms essentially the same as those of the agreement of February 6, 1967, but containing a different paragraph 15 relating to the Duration of the Agreement. Paragraph 15 in the proposed new agreement deleted the first sentence which appeared in the old agreement and which read as follows:

"This agreement shall be in force for a term of one year from the date of execution and, unless terminated as hereinafter provided, shall automatically renew itself for successive one-year periods."

Said proposed agreement did contain in paragraph 15 a provision for termination which read as follows:

"This agreement may be terminated by either party at any time with or without cause, by giving thirty (30) days' notice in writing to the other by registered mail of its intention to terminate, provided that if this agreement is terminated by either party because of a breach of this contract by the other party, then such termination shall be effective immediately upon the receipt of such notice by registered mail."

In April of 1972, plaintiff executed and returned the proposed new dealer agreement to defendant, adding thereto the following provision:

"Subject to agreement referred to in C.A. No. 69–2507."

Defendant never executed said proposed agreement and it never became a binding contract.

11. In January of 1968, defendant was seeking to establish a dealer in the metropolitan New York City area and at the suggestion of its president, Henry Harnischfeger, one Robert T. Grant ("Grant") was asked to form a corporation to act as the dealer in New York. Grant agreed.

12. One of the terms of the agreement between Grant and defendant was that Grant's financial investment in the new corporation to be formed and known as "Grandor" would be limited to $5,000 in cash. Defendant agreed to aid in the establishment of the Grandor dealership either through the devices of loans or guaranteed financing.

13. Grant was then and continues to be the owner of Johnson and Dealaman, Inc., a New Jersey corporation, which was and is a competitor of plaintiff in the sales, rental and servicing of heavy construction equipment in the Northern New Jersey area.

14. Grant demanded of defendant a commitment, that if Johnson and Dealaman had their dealership for Lorain Cranes and Equipment cancelled, defendant would make Johnson and Dealaman its dealer for P & H Products in Northern New Jersey, the territory of plaintiff.

15. Lorain did cancel Johnson and Dealaman, and on request of Grant, defendant attempted to cancel plaintiff and substitute Johnson and Dealaman as its Northern New Jersey dealer in October 1969. Said attempt to terminate plaintiff was rescinded prior to the effective date of termination. The afore-

said conduct did not constitute an antitrust violation by defendant.

16. Defendant cancelled plaintiff effective June 30, 1972, for business reasons other than those referred to in finding of fact #15 and said termination does not constitute an antitrust violation.

17. The principals of Grandor were Rowland Dory ("Dory") and Robert Grant ("Grant") and they continued to be the principals in said business until June of 1972, when Grant sold his interest in Grandor to Dory and retired from Grandor.

18. Grandor is a separate business entity and is not owned by defendant.

19. Grandor has requested of defendant and received from defendant financing considerations far superior to any offered to plaintiff by defendant. However, plaintiff did not request any similar financing considerations and has elected to rely upon its own excellent financing arrangements with its local banks.

20. The difference in financing arrangements negotiated by Grandor and plaintiff with defendant does not constitute an antitrust violation.

21. Among the products manufactured by plaintiff are 250 ton truck cranes. Defendant has sold a total of fifteen of said 250 ton truck cranes since the inception of manufacturing, approximately four years ago.

22. Three of said truck cranes have been sold in the New Jersey area; two for use in New Jersey and one for use in Greece. Of the three 250 ton truck cranes sold in New Jersey, plaintiff was responsible for obtaining the purchaser, "Hoffman Company", for the first sale, and plaintiff claims that the other two truck cranes were sold pursuant to an option given to Hoffman at the time of purchase of the first 250 ton truck crane.

23. Five of said truck cranes have been sold by defendant in the New York City area.

24. At least two German manufacturing firms sell truck cranes with capacities in excess of 250 tons.

25. Several American companies also manufacture truck cranes which initially or with modification have capacities equivalent to, or in excess of the capacity of defendant's 250 ton truck cranes. The American manufacturers are Lima, American Hoist and Derrick, and Manitowoc. Lima has sold at least three of the aforesaid truck cranes in the United States.

26. Under the evidence presented, defendant does not monopolize, nor attempt to monopolize, not has it conspired or combined with others to monopolize the heavy construction equipment field or the 250 ton truck crane field.

27. Defendant's notice to plaintiff under date of September 4, 1969, advising plaintiff of defendant's intention to terminate plaintiff's dealer agreement, effective October 31, 1969, was contrary to the terms of the agreement of February 6, 1967, and not justified by any improper conduct on plaintiff's behalf.

28. On June 30, 1972, defendant terminated plaintiff for cause, sending plaintiff a termination notice reading as follows:

"Section 3(b) of the Dealer Agreement, dated February 5, 1967, which is presently in force between our companies, requires Eastcoast Equipment Company in its normal service territory to 'fully and adequately promote and develop the sale of P & H Products and employ a sufficient staff of qualified salesmen for said purpose.'

"A careful review of your performance as a Harnischfeger Dealer reveals a drastic decline in your sales of P & H Products during the last twelve months. It is evident, therefore, that Eastcoast Equipment Company has failed to comply with paragraph 3(b) of the Dealer Agreement.

"Accordingly, pursuant to the provisions of Section 15 of the Dealer

Agreement, you are hereby notified that this agreement is terminated because of your failure or neglect to perform and because of your breach of this agreement. This termination is effective immediately upon your receipt of this notice."

29. Upon receipt of said notice of June 30, 1972, plaintiff filed a Rule to Show Cause why injunctive relief should not be granted to plaintiff. After a conference, the parties entered into a stipulation which has substantially maintained the status quo pending the determination of plaintiff's request for injunctive relief.

30. Plaintiff has not failed nor neglected to perform nor in any way breached the terms of the contract entered into by and between the parties on February 6, 1967.

31. The termination of the contract by defendant before the 6th day of February 1973, when the one year renewal term will expire, is a violation of the agreement.

32. On or about October 20, 1969, plaintiff became a dealer for Poclain, a manufacturer of products which are to some extent competitive with certain P & H Products. The maintaining of said dealership by plaintiff is not a violation of the agreement entered into with defendant; however, plaintiff has offered to terminate said agreement if defendant so desired and defendant has not indicated that it wishes plaintiff to terminate said agreement. While plaintiff has made substantial sales of Poclain products, it has also maintained an adequate sales force, continued to try to sell, and has used its best effort to sell the product of defendant.

33. Plaintiff has complied with the requirements of the agreement as set forth in paragraph 3(b) which provides as follows:

"Dealer agrees in its normal service territory, dealer will:

(b) fully and adequately promote and develop the sale of said products and employ sufficient staff of qualified salesmen for said purpose."

34. Plaintiff's performance has not met the expectations of defendant; however, it is defendant's conduct which has substantially contributed toward what defendant considers inadequate performance. Among the difficulties occasioned by the conduct of defendant are the following:

(a) In 1968, the Hoffman Crane and Rigging Service Co., Inc., and their affiliate ("Hoffman") was plaintiff's largest customer for both equipment and parts sales. Defendant with full knowledge of the importance of Hoffman to plaintiff's sales nevertheless made Hoffman its Bermuda dealer. All dealers are assigned territories, but are free to sell in any other territory; accordingly, Hoffman immediately ceased placing orders through plaintiff and now places them through its own dealership.

(b) Defendant by establishing Grandor as its New York dealer has countenanced sales and rentals of its equipment in plaintiff's Northern New Jersey territory by permitting Grandor to purchase equipment and then make it available for sale or rental through Grant's wholly owned New Jersey firm of Johnson and Dealaman.

(c) Because of the pendency of this action, defendant placed plaintiff for a period of six (6) months on a cash on delivery basis for parts and equipment notwithstanding the fact that plaintiff has always enjoyed an excellent credit experience and reputation with defendant.

(d) Defendant has failed to fully cooperate with plaintiff in making sales, although under the special discounting arrangement of defendant, cooperation by the defendant is necessary. At times, defendant has not provided plaintiff with the current price list and has not responded to plaintiff's inquiries concerning commissions on claimed sales to Hoffman.

35. Any damages suffered by plaintiff may be compensated for by money

damages which are readily ascertainable and, accordingly, plaintiff has an adequate remedy at law.

36. Plaintiff will not suffer irreparable harm and is not entitled to equitable relief.

## DISCUSSION

On October 24, 1969, plaintiff ("Eastcoast") filed this action alleging certain antitrust and contractual violations by defendant ("Harnischfeger"). Since 1963, Eastcoast has been a dealer for Harnischfeger, a heavy construction equipment manufacturer, making products hereinafter referred to as P & H Products. The parties are presently bound by an agreement dated February 6, 1967, the latest in a series of agreements.

On or about September 4, 1969, Harnischfeger notified Eastcoast of its intention to terminate the agreement, effective October 31, 1969. Eastcoast objected to the proposed cancellation and after negotiations failed to resolve the dispute, Eastcoast filed this action on October 24, 1969. On October 27, 1969, Harnischfeger notified Eastcoast of the rescission of the notice of intention to terminate and, after acceptance by Eastcoast, the parties continued to operate under the agreement of February 6, 1967. Thus, the termination scheduled for October 31, 1969, never became effective.

Thereafter, on June 30, 1972, Harnischfeger notified Eastcoast of its immediate termination as a dealer because of an alleged failure to comply with paragraph 3(b) of the agreement which requires Eastcoast to "fully and adequately promote and develop the sale of products and employ a sufficient staff of qualified salesmen for said purpose."

On receipt of said notice, Eastcoast immediately filed in this pending action a motion for injunctive relief. After a conference, the parties entered into a stipulation which essentially maintained the status which existed prior to June 30, 1972, until final determination of plaintiff's request for injunctive relief.

■■ The parties were given an opportunity to fully litigate the issues concerning injunctive relief and the preceding findings of fact are fully supported by the evidence produced at the aforesaid hearings. For the reasons herein discussed, we have concluded that the evidence does not establish a substantial likelihood that Eastcoast will ultimately prevail on its charges of various antitrust act violations. However, the evidence does establish the substantial likelihood that Eastcoast will ultimately prevail on the contractual action set forth in its complaint. The evidence clearly establishes that defendant's attempt to terminate the contract is in violation of the terms of the contract, and that plaintiff is not in default in complying with the terms of the agreement. However, because Eastcoast has failed to establish that it will suffer irreparable harm by reason of the action of Harnischfeger and because Eastcoast has an adequate remedy at law for damages resulting from a premature termination of the agreement, we deny Eastcoast's motion for injunctive relief.

### 1. *Alleged Antitrust Violations*

The conduct of Harnischfeger on which Eastcoast relies is Harnischfeger's apparent acquiescence in a demand by one Robert Grant ("Grant") that if Grant's wholly owned company, Johnson and Dealaman ("J & D"), had its dealership in heavy construction equipment cancelled by the Lorain Manufacturing Company, a Harnischfeger competitor, then Harnischfeger would cancel Eastcoast and make J & D its dealer in Northern New Jersey. This arrangement was part of an agreement entered into between Grant and Harnischfeger on demand of Grant, as a condition for Grant forming a corporation ("Grandor") to act as Harnischfeger's dealer in the Greater New York City area. In 1969, Lorain cancelled the dealership of Johnson and Dealaman. On demand of grant, Harnischfeger notified Eastcoast of its intention to terminate Eastcoast as a dealer and notified Grant of its in-

tention to award the Northern New Jersey dealership to Grant for Johnson and Dealaman. However, before the effective date of the 1969 termination, Harnischfeger rescinded its notice of intention to terminate and Eastcoast continued as Harnischfeger's dealer in Northern New Jersey. It is Eastcoast's contention that the attempted termination of it by notice dated June 30, 1972, is a continuation and implementation of the agreement reached by Harnischfeger and Grant in 1968 to terminate Eastcoast and replace it with Johnson and Dealaman. However, the evidence does not support this contention by Eastcoast.

We conclude that there is insufficient evidence to support a finding that defendant in notifying Eastcoast in 1969 of an intention to terminate, and in 1972 of immediate termination, either did or intended to restrain trade, or to damage Eastcoast, or to force plaintiff to comply with any unlawful demand, or to create a monopoly. The evidence clearly demonstrates a business decision by defendant to take such steps as were necessary to establish a dealer in P & H Products in the Greater New York City area in 1969, and to increase its dealer productivity in Northern New Jersey in 1972.

There is no evidence of any attempt by Harnischfeger to conspire with other manufacturers to deprive Eastcoast of access to heavy construction equipment; to the contrary, Harnischfeger did not object to Eastcoast continuing to sell the competitive products produced by another manufacturer, Poclain. Indeed, Eastcoast entered into an agreement to act as dealer for Poclain shortly after receiving notice of defendant's intention to terminate its agreement effective October 31, 1969, and Eastcoast has continued to sell this competitive product with increasing success. Thus, Eastcoast's reliance on Klor's, Inc. v. Broadway-Hale Stores, Inc., 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959), is misplaced. The evidence in this case does not show the concerted group boycott action as alleged in *Klor's.*

The evidence produced by Eastcoast does not sustain the charge of an unlawful monopoly of trade in the heavy equipment construction field or, more specifically, in the 250 ton truck crane field; nor may we infer from the evidence produced that Harnischfeger intended to, or attempted to so monopolize either in the United States or the metropolitan New York City-Northern New Jersey market areas. The evidence produced by plaintiff clearly establishes a highly competitive industry in which defendant lacks the power to control prices or unreasonably restrict competition. See United States v. E. I. DuPont De Nemours & Co., 351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 1264 (1956).

Eastcoast's evidence indicates that another of defendant's dealers, Grandor, asked for and received more favorable financing terms than Eastcoast. However, Eastcoast's Vice President testified that financing was available to plaintiff from Harnischfeger or its subsidiary, but that Eastcoast, a substantial and established company, preferred to finance through its own local banks where it could obtain more favorable financing. Plaintiff was unable to offer proof of any actual discrimination in price. Accordingly, there is no evidence to sustain plaintiff's claim of a Robinson-Patman violation.

The evidence does not establish that the agreement of 1968 between Grant and defendant is the motivating reason for the termination of June 30, 1972. However, even if the evidence established that Harnischfeger is attempting to carry out its 1968 agreement with Grant, it would only establish an agreement by a manufacturer and a proposed new dealer to terminate an existing dealer and award the dealership to the proposed new dealer. Without more, this is not a violation of Section 1 or Section 2 of the Sherman Act. See Ark Dental Supply Company v. Cavitron Corporation, 461 F.2d 1093 (3rd Cir. 1972); Joseph E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, Ltd., 416 F.2d 71 (9th Cir. 1969), cert. denied, 396 U.S.

1062, 90 S.Ct. 752, 24 L.Ed.2d 755 (1969); Instant Delivery Corp. v. City Stores Co., 284 F.Supp. 941 (E.D.Pa. 1968). Thus, Eastcoast has failed to show that it may ultimately prevail on its antitrust cause of action and accordingly is not entitled to injunctive relief.

### 2. Contract Violations

Eastcoast has clearly established that there is a substantial likelihood that it will ultimately prevail at the trial on the merits of its claim in regard to the contractual violation. Harnischfeger contends that it has the right to terminate the contract without notice because of an alleged breach by Eastcoast of paragraph 3(b) of the contract which provides that:

"3. Dealer agrees that in his normal service territory, Dealer will:

\*      \*      \*      \*      \*      \*

(b) fully and adequately promote and develop the sale of said products and employ a sufficient staff of qualified salesmen for said purpose."

As we have set out in finding of fact #34, any failure on the part of Eastcoast to perform in accordance with the expectation of Harnischfeger has been caused by the conduct of Harnischfeger and is therefore not a breach of the contract. Accordingly, Eastcoast is not in default and Harnischfeger's attempt to terminate the contract for cause is violative of the terms of the agreement.

While we conclude that Harnischfeger's conduct has substantially contributed to and caused any inadequacy of performance by Eastcoast, we also conclude that Eastcoast has an adequate remedy at law for damages and will not suffer irreparable harm; accordingly, Eastcoast is not entitled to injunctive relief. Relevant to the determination concerning equitable relief is paragraph 15 of the contract which provides for the term of the agreement. The agreement became effective on February 6, 1967, and the duration clause provides as follows:

"15. This agreement shall be in force for a term of one year from the date of execution and, unless terminated as hereinafter provided, shall automatically renew itself for successive one-year periods. This agreement may be terminated by either party at any time by giving thirty (30) days' notice in writing to the other by registered mail of its intention to terminate, provided that if this agreement is terminated by either party because of failure or neglect to perform or because of any other breach of this contract by such party, then upon notice of termination for such cause such termination shall be effective immediately upon the receipt of such notice by registered mail."

Harnischfeger contends that the proper interpretation of this agreement is to ignore the first sentence which sets forth a term of one year with automatic renewals from year to year and to interpret the agreement as being one terminable for cause immediately and also terminable without cause on thirty (30) days' notice. Eastcoast contends that the agreement as set forth in paragraph 15 provides for a one year term but claims that subsequent to the entry into this agreement on February 6, 1967, Eastcoast received assurances from the officers of Harnischfeger that they would not terminate it as long as they satisfactorily performed. Eastcoast claims that in reliance upon said promise it substantially changed its position and that Harnischfeger should be estopped from denying that the contract is for an indefinite duration and terminable only by reason of the default of a party to the agreement. While Eastcoast sets out in its request for findings of fact #17, alleged acts of reliance, it is clear that the acts set forth are reasonably expected and required, with one exception, by the standard dealer agreement. Clearly, having an adequate sales force, advertising and making its best effort to sell defendant's equipment are requirements of the written agreement. The fourth act of reliance alleged by Eastcoast is that it did not explore other opportunities to represent competing

lines of products; however, the evidence does not support this allegation as it is clear that Eastcoast presently represents other competing lines of products. Accordingly, there is no evidentiary basis for extending by estoppel the duration of the agreement for an indefinite term as proposed by Eastcoast. The agreement viewed in the light most favorable to Eastcoast creates at most a year to year contract which will expire on February 5, 1973. Thus, any grant of injunctive relief would extend only for less than a month. More important, with a definite term of a contract, defendant's damages, if any, are easily ascertained and are not speculative; accordingly, Eastcoast has an adequate remedy at law, and will not suffer irreparable harm by its failure to obtain injunctive relief.

For the reason set forth above, we entered an Order on January 11, 1973, denying Eastcoast's request for injunctive relief.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the parties and the subject matter of this action.

2. Plaintiff has not sustained its burden of showing that the defendant is in violation of, or has attempted to violate, or intended to violate any provisions of the antitrust laws.

3. Plaintiff has failed to sustain its burden of showing a substantial likelihood that it will ultimately prevail on its antitrust charges.

4. The agreement dated February 6, 1967, entered into between the parties to this action, is a valid contract binding on the parties thereto.

5. The termination by defendant of plaintiff as a dealer, effective June 30, 1972, was without cause, and a violation of said agreement.

6. Plaintiff is not in default under any of the terms of said agreement.

7. Plaintiff has sustained its burden of showing a substantial likelihood that it will ultimately prevail on its violation of contract charges.

8. Plaintiff has an adequate remedy at law by way of money damages for any injuries suffered by reason of defendant's breach of said contract and plaintiff has not and will not suffer irreparable injury.

9. Plaintiff is not entitled to injunctive relief.