**ALLIED ELECTRIC SUPPLY COMPANY**

v.

**MOTOROLA, INC., et al.**

**Civ. A. No. 73–531.**

United States District Court,
W. D. Pennsylvania.

Dec. 28, 1973.

Donald S. Hershman, Pittsburgh, Pa., for plaintiff.

Alexander Unkovic, M. Richard Dunlap, Clayton Sweeney, Pittsburgh, Pa., Walter T. Kuhlmey, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER DENY-
## ING DEFENDANTS' MOTIONS
## TO DISMISS

KNOX, District Judge.

This is an antitrust action brought by Allied Electric Supply Company (Allied Electric) which seeks treble damages against Motorola, Inc. (Motorola), Borg-Warner Acceptance Corporation (BWAC), and Three Rivers Tempair, Inc. (Three Rivers). Presently before the court are motions by each of the three defendants to dismiss under Rule 12(b)(6) Counts I and II of the plaintiff's amended complaint. These counts allege violations of Sections I and II of the Sherman Act, 15 U.S.C. §§ 1 and 2. The remaining four counts of the complaint, also grounded on the antitrust laws, involve defendant Motorola only and are not relevant for consideration at this time.

Plaintiff alleges the following facts. From June 6, 1963 until February 28, 1973, the plaintiff had been a duly authorized Motorola distributor. As such, the plaintiff had purchased from Motorola radios, televisions, phonographs and other consumer products which plaintiff then sold to various independent and chain retail outlets. The defendant BWAC provided floor financing for plaintiff's customers from the time plaintiff became a Motorola distributor through December of 1970 when plaintiff terminated its relationship with BWAC.

On February 28, 1973, Motorola cancelled plaintiff's franchise and appointed the defendant Three Rivers as the new Motorola distributor, with BWAC to provide floor financing to Three Rivers' customers. Plaintiff alleges a conspiracy by the three defendants to eliminate plaintiff as a Motorola distributor. Plaintiff alleges that BWAC, by conspiring with Motorola, has monopolized or attempted to monopolize the floor financing of retail stores that sell Motorola products, and that the elimination of plaintiff as a Motorola distributor is part of that conspiracy.

Count I charges that the facts alleged violate Section I of the Sherman Act, 15 U.S.C. § 1; Count II, grounded on the same facts, charges a violation of Section II of the same Act.

■ In ruling on this motion for judgment on the pleadings, we must take the material allegations to be true. Doubts will be resolved in favor of upholding the pleading. Knuth v. Erie-Crawford Dairy Co-operative Association, 395 F.2d 420 (3d cir 1968). The Supreme Court has indicated that we should be extremely liberal in construing antitrust complaints. See Radiant Burners, Inc. v. Peoples Gas, Light & Coke Company, 364 U.S. 656, 81 S.Ct. 365, 5 L.Ed.2d 358 (1961); Radovich v. National Football League, 352 U.S. 445, 77 S.Ct. 390, 1 L.Ed.2d 456 (1957); and United States v. Employing Plasterers Association, 347 U.S. 186, 74 S.Ct. 452, 98 L.Ed. 618 (1954). In Employing Plasterers, supra, the court made clear that "whether the charges be called 'allegations of fact' or 'mere conclusions of the pleader,' . . . they must be taken in account" in deciding whether a claim for relief is stated. The court further said:

> "* * * [W]here a bona fide complaint is filed that charges every element necessary to recover, summary dismissal of a civil case for failure to set out evidential facts can seldom be justified. If a party needs more facts, it has a right to call for them under Rule 12(e) of the Federal Rules of Civil Procedure. And any time a claim is frivolous an expensive full dress trial can be avoided by invoking the summary judgment procedure under Rule 56." Above at p. 189, 74 S. Ct. at p. 454, 98 L.Ed. at 623.

We feel confident that the Supreme Court's attitude toward judgment on the pleadings in antitrust cases has not changed since the decision in Employing Plasterers by looking at the decision involving summary judgment in Fortner Enterprises v. United States Steel Corporation, 394 U.S. 495, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969). There, quoting

Poller v. Columbia Broadcasting Systems, 368 U.S. 464, 82 S.Ct. 486, 7 L. Ed.2d 458 (1962), the court states:

"We believe that summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot. It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised."

We will deal first with Count I of the complaint, which charges a violation of Section I of the Sherman Act, 15 U.S.C. § 1. That statute prohibits "every contract, combination . . . or conspiracy, in restraint of trade or commerce among the several States. . . ."

The defendants first contend that Motorola has an absolute right to terminate its business dealings with plaintiff, and that the business necessity of making new arrangements for a distributor of Motorola's products does not violate the Sherman Act, whether the new arrangements were entered into before or after terminating the old distributor. Defendants rely on Ark Dental Supply Co. v. Cavitron Corporation, 461 F.2d 1093 (3d cir 1972), from which they quote:

"We deem the decision of the Ninth Circuit in Joseph E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, Ltd., 416 F.2d 71 (C.A.9, 1969), cert. denied, 396 U.S. 1052, 90 S.Ct. 752, 24 L.Ed.2d 755 (1970), to be dispositive of the instant case. In a thorough and well-researched opinion, the court, speaking through Judge Duniway, held that it is indisputable that a single manufacturer or seller can ordinarily stop doing business with A and transfer his business to B and that such a transfer is valid even though B

may have solicited the transfer and even though the seller and B may have agreed prior to the seller's termination of A." (Id. at 1094)

But Ark Dental Supply affirmed a *summary judgment*. The plaintiff had first been given the opportunity to develop the underlying facts through discovery procedures, to ascertain the intent or motives that might have been present. Ark Dental Supply does not lend support to defendants' motion for judgment on the pleadings.

The Hawaiian Oke case, cited by the Third Circuit in Ark Dental Supply and relied on by defendants, is likewise inapposite. Hawaiian Oke held that the evidence produced at a jury trial was insufficient to show an unlawful restraint of trade. While that case states, as the defendant Three Rivers notes in its brief, that for a manufacturer or supplier to agree with a distributor to give him an exclusive franchise (even if this means cutting off another distributor) is not a *per se* violation of the antitrust laws, the court confined its decision to the facts of the case. At 416 F.2d 78, the court notes:

"We agree that a 'combination or conspiracy' to establish a common distributor could be shown to have such an adverse purpose or effect on competition that it would violate section 1 of the Sherman Act as an unreasonable restraint of trade."

Most of the cases cited by the defendants suffer the same deficiency: they do not involve dismissals on the pleadings but were decided on the evidence or by summary judgment.[1] The court is aware of some antitrust cases in which judgment on the pleadings was granted, but they are neither dispositive of the present case nor binding on this court. Among these cases [2] is Ace Beer Distributors, Inc. v. Kohn, Inc., 318 F.2d 283

---

1. E. G., Eastcoast Equipment Co. v. Harnischfeger Corp., 354 F.Supp. 335 (E.D.Pa. 1973); Peerless Dental Supply Co. v. Weber Dental Mfg. Co., 283 F.Supp. 288 (E.D.Pa. 1968).

2. Cases holding conclusory allegations insufficient in antitrust actions include L. S. Good

& Co. v. H. Daroff & Sons, Inc., 263 F. Supp. 635 (N.D.W.Va.1967); Top-All Varieties, Inc. v. Hallmark Cards, Inc., 301 F. Supp. 703 (S.D.N.Y.1969); and E. A. Weinel Construction Co. v. Mueller Co., 289 F. Supp. 293 (E.D.Ill.1968).

(6th cir 1963), cert den 375 U.S. 922, 84 S.Ct. 267, 11 L.Ed.2d 116 (1964), in which the court ruled on the pleadings in favor of a manufacturer who terminated its relationship with one distributor and named a new distributor.

The case at bar goes beyond Ace Beer, however. Plaintiff alleges not only a change in distributors, but also an attempt to tie the sale of Motorola products with the use of BWAC financing. The thrust of the allegations is that Motorola cancelled plaintiff's franchise because plaintiff had terminated its dealings with BWAC.

While plaintiff analogizes his case to the "group boycott" cases and does not couch his pleadings in terms of an illegal tying arrangement, an examination of the "tying" cases is helpful. In Fortner Enterprises v. United States Steel Corporation, 394 U.S. 495, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969), the Supreme Court held that summary judgment against the plaintiff was not justified where United States Steel allegedly required the purchaser to take a tied product—prefabricated homes—as a condition of being allowed to purchase the tying product—credit. The court noted that the prerequisites of illegality often stated in the cases,[3] namely sufficient market power over the tying product and foreclosure of a substantial volume of commerce in the tied product, are not necessary in order to prevail on the merits. Those standards are necessary only to bring into play the doctrine of per se illegality. The court went on to say, at page 500, 89 S.Ct. at 1257, 22 L.Ed.2d at 503:

"A plaintiff can still prevail on the merits whenever he can prove, on the basis of a more thorough examination of the purposes and effects of the practices involved, that the general standards of the Sherman Act have been violated. Accordingly, even if we could agree with the District Court

that the Northern Pacific standards were not satisfied here, the summary judgment against petitioner still could not be entered without further examination of petitioner's general allegations that respondents conspired together for the purpose of restraining competition and acquiring a monopoly in the market for prefabricated houses. And such an examination could rarely justify summary judgment with respect to a claim of this kind. . . ."

The fact that the present case involves two companies allegedly conspiring together to tie their products, rather than one company tying two of its own products as in Fortner, supra, would in no way enhance the defendants' position.

■ The pleadings do not give details of the alleged conspiracy such as the time of any meetings or the terms of any agreements, but the plaintiff does point specifically to its own termination as a distributor following its disassociation with BWAC. Admittedly, the distributorship termination occurred more than two years after the plaintiff ended its relationship with BWAC. Nevertheless, coupled with the allegations to the effect that BWAC "monopolizes" Motorola floor financing and that BWAC became the floor financer when Three Rivers took over the distributorship, we feel the allegations are sufficiently particular to allow plaintiff to proceed in developing his case. Knuth v. Erie-Crawford Dairy Co-operative Association, 395 F. 2d 420 (3d cir 1968).

We are aware of the holding in Black & Yates v. Mahogany Association, 129 F.2d 227, 148 A.L.R. 841 (3d cir 1942), that a general allegation of conspiracy without a statement of the facts is an allegation of a legal conclusion and is insufficient of itself to constitute a cause of action. The court stated that although detail is unnecessary, the plaintiff must plead facts constituting the

---

3. See, e. g., Northern Pacific Rr. Co. v. United States, 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958) ; and Internat'l Salt Co.

v. United States, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20 (1947).

conspiracy, its object and accomplishment. While the weight to be given Black & Yates is in doubt in light of Knuth and the Supreme Court decisions discussed above, we may note, as did the Third Circuit in Knuth, that Black & Yates "has no decisive pertinency to this amended complaint."

■ The defendants also ground their motion to dismiss on the lack of allegations of public injury, arguing that if plaintiff has been damaged it is a purely private injury. The law is now clear that it is not necessary for the plaintiff to show the particular way in which the public is harmed; a purely private injury may warrant relief. Radiant Burners, Inc. v. Peoples Gas, Light & Coke Company, 364 U.S. 656, 81 S.Ct. 365, 5 L.Ed.2d 358 (1961); Klor's v. Broadway-Hale Stores, 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959). As the court said in Klor's in finding a *per se* violation:

> "[I]t is not to be tolerated merely because the victim is just one merchant whose business is so small that his destruction makes little difference to the economy. Monopoly can as surely thrive by the elimination of such small businessmen, one at a time, as it can by driving them out in large groups."

■ Plaintiff has alleged that his Motorola distributorship has been terminated as a result of the defendants' unlawful conspiracy. If that allegation is true, plaintiff is entitled to establish the amount of his damages. The defendant's argument that the plaintiff must allege that he was unable to obtain competitive products or financing is of no merit. The defendants are free, of course, to raise those matters of availability of alternative products in assessing the amount of plaintiff's damages. In any event, the plaintiff has alleged generally, if not specifically, that he was unable to obtain competing products.

The motions to dismiss as to Count I will therefore be denied.

As to Count II, grounded on Section II of the Sherman Act, the court has considerable doubt as to whether a cause of action is stated. Section II of the Sherman Act prohibits monopolizing or attempting to monopolize any part of trade or commerce among the several states.

■ Plaintiff has not alleged an attempt to monopolize all floor financing of televisions, phonographs and related items; plaintiff alleges an attempt to monopolize the floor financing of *Motorola products* only. Every manufacturer has, in a sense, a natural monopoly over its own trade-marked or patented product, and when the manufacturer chooses to deal with only one distributor, or in this case financer, that distributor has the same "monopoly." However, the cases do not prohibit the monopoly over one's own product without more. The monopoly cases consider a broader market, taking into account the competitors whose products, if not identical to the "monopolist's," are substitutes for it. See, e. g., United States v. E. I. du Pont De NeMours & Co. 351 U.S. 377, 76 S. Ct. 994, 100 L.Ed. 1264 (1956) (75% of cellophane production is not a monopoly where competition from other flexible packaging materials).

■ Monopoly power is "the power to control prices or exclude competition." United States v. Grinnell Corporation, 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966). Some authorities have indicated that an attempt to monopolize cannot be established unless there is a "dangerous probability" of monopolization if the attempt is successful. T. V. Signal Company of Aberdeen v. A. T. & T., 462 F.2d 1256 (8th cir 1972).

The Third Circuit in Knuth v. Erie-Crawford Dairy Co-op. Association, supra, has taken a broader position, saying, 395 F.2d at page 425:

> "Plaintiff has alleged a conspiracy which restrains competition in the sale of milk. He, therefore, has alleged a violation of Section 1 of the Sherman Act, since a restraint on

competition, as a matter of law, necessarily restrains commerce as that term is used in the Act. Since a conspiracy to suppress and eliminate competition tends to monopolize a portion of trade or commerce among the several states, plaintiff has also set forth sufficient allegations to charge a violation of Section 2 of the Sherman Act."

We do not feel that the Knuth case would compel that we deny judgment on the pleadings here, as plaintiff presents different factual contentions and has chosen a very narrow market in his allegations of restraint on trade. Nevertheless, in light of Knuth, we will not dismiss Count II at this time. We feel that it is, in any event, premature to dismiss Count II, which is so closely related to Count I, since we have determined Count I to state a valid claim. We do not see how allowing Count II to stand would impose any significant additional burden on the defendants in the course of discovery proceedings.

The motions to dismiss will be denied as to both Counts.