**R. Anthony MARRESE, M. D., and Michael R. Treister, M. D., Plaintiffs,**

v.

**AMERICAN ACADEMY OF ORTHO-PAEDIC SURGEONS, Defendant.**

**No. 80 C 1405.**

United States District Court,
N. D. Illinois, E. D.

Sept. 3, 1980.

Glenn A. Schwartz, Charlotte W. Ziporyn, Landesman, Schwartz & Auslander, Chicago, Ill., Stephen B. Cohen, William J. Stevens, Joseph Schuman, Michael T. Sawyer, Foss, Schuman & Drake, Chicago, Ill., for plaintiffs.

Thomas M. Crisham, Thomas S. White, Pamela S. Hollis, Robert E. Nord, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for defendant.

## OPINION AND ORDER

SHADUR, District Judge.

Defendant American Academy of Orthopaedic Surgeons ("Academy") has moved to dismiss the Amended Complaint (the "Complaint") filed by plaintiffs R. Anthony Marrese and Michael R. Treister (respectively "Dr. Marrese" and "Dr. Treister"). For the reasons stated in this opinion and order the Academy's motion is denied.

### Plaintiffs' Amended Complaint

Drs. Marrese and Treister are Board-certified practicing orthopaedic surgeons. They complain of allegedly having been arbitrarily excluded, by procedures amounting in legal effect to a group boycott, from membership in the Academy.

Although Academy membership is not a condition to practice as an orthopaedic surgeon, the Academy is characterized by the Complaint as "in a word, a monopoly in its field, possessed of substantial power to control the market for orthopaedic surgical services, especially by denying access to any of the various subspecialty organizations of the practice." Appendix A to this Opinion sets forth Paragraphs 8–12 of the Complaint, the principal allegations dealing with the claimed significance of membership or non-membership in the Academy.

### Prior Illinois Proceedings

Most of the Academy's attack on the Complaint is based on Drs. Marrese and Treister having sued in the Illinois courts on virtually the same set of facts alleged in

the Complaint—with important exceptions stemming from the lack of jurisdiction in the state courts to enforce the federal antitrust laws. In their Illinois actions Drs. Marrese and Treister sued separately for declaratory relief as to the claimed illegality of the Academy's hearing procedures in denying them membership.

Dr. Treister's complaint was ultimately dismissed with prejudice for failure to state a cause of action, by a 2–1 decision of the Illinois Appellate Court.[1] Dr. Marrese's separate complaint had been stayed by the Circuit Court of Cook County pending the Treister appeal. Though the parties are in dispute as to the final disposition of the Marrese case, this Court will assume for purposes of this opinion that it has been or will be similarly dismissed with prejudice.

### Memoranda filed by the Parties

Counsel have provided the Court with more than 135 pages of briefs (sic!). Eighty-five of those pages reflect the Academy's efforts to set aloft a cluster of barrage balloons to prevent what it views as plaintiffs' proposed raid on the fellowship of the Academy.

This Court will not seek to emulate either party in length of discussion. It will instead deal as briefly as possible with the effect of the two critical elements that let the air out of the Academy's balloons:

1. Federal courts have *exclusive* jurisdiction over the federal antitrust laws.
2. Dr. Treister's Illinois lawsuit was disposed of on a motion to dismiss and not after a hearing on the merits.

### Res Judicata and Collateral Estoppel

■ There can of course be no difference between the parties as to the essential principles of the doctrine of res judicata and collateral estoppel. As another Judge of this Court put it briefly in *Batiste v. Furnco Construction Co.*, 350 F.Supp. 10, 14 (N.D.Ill.1972):

Res judicata usually means that when a court of competent jurisdiction has rendered a final judgment on the merits of an action, equity will bar a subsequent suit between the same parties on the same cause of action not only as to matters which were decided but also as to those matters which might have been decided.

And if the identity of actions is not sufficient to invoke res judicata, principles of collateral estoppel operate in the manner expressed by the Restatement (Second) of the Law of Judgments (the "Restatement") § 68 (Tent. Draft No. 4, 1977) (emphasis added):

When an issue of *fact* or *law* is *actually litigated and determined* by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

### 1. Res Judicata

■ Res judicata cannot apply here by its very definition. No federal antitrust claim was in fact decided by the Illinois courts on the merits. It is equally clear that, because of their lack of jurisdiction to do so, no federal antitrust claim "might have been decided" by the Illinois courts—because for that purpose they are not courts of "competent jurisdiction." As our Court of Appeals succinctly put the legal principle in a related (though factually distinguishable) context, *Kurek v. Pleasure Driveway & Park District of Peoria*, 583 F.2d 378, 379 (7th Cir. 1978):

Defendants' arguments that the antitrust claims have been adjudicated in state court proceedings are insupportable both because the state courts have not in fact purported to do so, and because jurisdiction of federal antitrust suits is exclusively in the federal courts.

396 N.E.2d 1225 (1st Dist. 1979).

---

1. *Treister v. American Academy of Orthopaedic Surgeons*, 78 Ill.App.3d 746, 33 Ill.Dec. 501,

It is that fact that makes inapplicable the principal precedents on which the Academy seeks to rely: cases in which earlier proceedings in a *federal court* (one by definition having the power to adjudicate federal antitrust claims) were held to preclude later antitrust suits whether or not the first court had actually decided such a claim.[2] In that respect Judge Decker's opinion in *Lincoln National Bank v. Lampe*, 414 F.Supp. 1270, 1279–80 (N.D.Ill.1976), dealing with a like argument in the securities field, might well have been written for this case:

> Despite the extensive treatise on *res judicata* submitted in the defendant's memorandum, if fails to address the implication of the statutory provision of § 27 of the 1934 Act which vests exclusive jurisdiction for violations of that Act in the federal courts. Furthermore, § 28 of the same Act provides that the remedies under the Act are given in addition to any other remedies existing in law or equity. Thus it appears that plaintiff could neither bring its 1934 Act claim before the Circuit Court, nor is it barred from seeking additional relief under that Act in federal court.

That this accurately reflects the general law in this field is confirmed by the squarely applicable language of Section 61.2(1)(c) of Tentative Draft No. 5 (1978) of the Restatement, and even more specifically by Official Comment (1) thereon and Illustration 2 thereunder (from which the present case follows *a fortiori*):

> A. Co. brings an action against B. Co. in a state court under a state antitrust law and loses on the merits. It then commences an action in a federal court upon the same facts, charging violations of the federal antitrust laws, of which the fed-

eral courts have exclusive jurisdiction. The second action is not barred.

In this Court's view Judge Merhige's opinion in *Nash County Board of Education v. Biltmore Co.*, 464 F.Supp. 1027 (E.D.N.C. 1978) may be distinguished from this case because of what he characterized (464 F.Supp. at 1030) as the manner in which "the North Carolina antitrust enforcement mechanism almost completely mirrors its federal counterpart, especially with respect to the availability of treble damages." In any case, however, this Court does not agree that the approach suggested by Judge Merhige ought to apply here as against the principles announced and applied in Judge Learned Hand's opinion in *Lyons v. Westinghouse Electric Corp.*, 222 F.2d 184, 189 (2d Cir. 1955); or in *Cream Top Creamery v. Dean Milk Co.*, 383 F.2d 358 (6th Cir. 1967); or in the *Lincoln National Bank* and *Kurek* cases previously cited; or in the Restatement; cf. *Butterman v. Steiner*, 343 F.2d 519, 520 (7th Cir. 1965).

### 2. *Collateral Estoppel*

As for collateral estoppel, the teaching of that doctrine (again to quote the Restatement) is that the effect of the Illinois litigation is limited to "questions of *fact* or *law* actually litigated and determined" in the first action between the parties. There is thus a critical difference between an earlier case in which the parties have gone to trial or otherwise had a factual determination and a case, like the Illinois cases here, disposed of on a motion to dismiss the complaint—that is, on questions of law.

■ Illinois has decided that the facts there alleged by Drs. Marrese and Treister were not sufficient as a matter of law to state a cause of action under Illinois law.[3] Indeed the entire concept of a motion to dismiss is not that plaintiffs' allegations

---

**2.** See *Martino v. McDonald's System, Inc.*, 598 F.2d 1079 (7th Cir. 1979); *Green v. American Broadcasting Cos., Inc.*, 572 F.2d 628 (8th Cir. 1978); and *Norman Tobacco & Candy Co., Inc. v. Gillette Safety Razor Co.*, 295 F.2d 362 (5th Cir. 1961).

**3.** For example, it is disingenuous to assert, as the Academy does, that the Illinois court "found that membership in the Academy was

not an economic necessity." What the Illinois court determined was (1) that an allegation of "economic necessity" was necessary to support a cause of action under Illinois law and (2) that the Illinois complaint was deficient for lack of a sufficient allegation in that respect—something very different indeed from the Academy's assertion.

have or have not been determined to be *true*, but rather that even *assuming* them to be true plaintiff has no legal right to relief.[4]

■ Thus the issue that has really been adjudicated between the parties is that the Academy's conduct complained of by Drs. Marrese and Treister afforded no remedy under Illinois law. There has been no "issue of *fact* [essential to the judgment] . . actually litigated and determined by" the Illinois courts.[5] This Court is of course free to determine whether the federal antitrust laws are breached by that same conduct. Nothing the Illinois Appellate Court has said did—or could—decide that issue.[6]

### Antitrust Issues

Because we are at the threshold pleading stage, the test to be applied to the sufficiency of the Complaint is that stated in *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957):

> [A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

**4.** This analysis is dispositive of all of the Academy's arguments as to the issues allegedly "adjudicated" in the Illinois case, which Drs. Marrese and Treister would then be estopped from relitigating.

**5.** Only one case cited by the Academy deals with this proposition in any respect, *Florasynth Laboratories, Inc. v. Goldberg*, 191 F.2d 877 (7th Cir. 1951). There the Court considered the effect of a prior District Court decree dismissing a trademark and unfair competition complaint. Although the Court spoke in res judicata terms, the principle actually applied was that of collateral estoppel (since plaintiff was complaining in the second action of allegedly tortious acts occurring *after* entry of the judgment in the first action). As the Court said, 191 F.2d at 880:

> It is fundamental that material facts or questions judicially determined in one action by a judgment may not be tried in a subsequent action between the same parties or their privies, whether the second action is upon the same or a different cause of action as the earlier action. . . . The findings and conclusions of the Court on questions neces-

While this Court is thus not expressing its views as to whether Drs. Marrese and Treister can ultimately sustain the burdens of proof they have undertaken by their Complaint, it upholds the Complaint against the several attacks contained in the Academy's motion and supporting memoranda:

■ 1. Claims based on plaintiffs' alleged lack of standing to sue under the federal antitrust laws are ill-founded. They are based on a mistaken view of the "target area" concept, because plaintiffs are claiming direct damage to their "business" as surgeons as the result of the Academy's alleged antitrust violations. This charge is in turn based on the adequately alleged nexus between lack of Academy membership and plaintiffs' competitive disadvantage in the practice of orthopaedic surgery.

■ 2. Though often conclusory in nature, the allegations of the Complaint are no more so than is contemplated by the "notice pleading" approach of the Federal Rules of Civil Procedure. See for example Complaint Paragraphs quoted in Appendix A and the allegations of Complaint Paragraphs 49-63.

> sarily in issue on such a motion are just as binding as if the questions had been decided after a trial of such issues. (citations omitted)

Unlike the situation here, the Court in the earlier action had determined that precisely the same kind of conduct alleged in the second action was not actionable *on the same grounds* sought to be charged in the second action. It was that determination of an issue of law that was necessarily "just as binding as if the questions had been decided after a trial of such issues."

**6.** Presiding Judge Seymour Simon, a distinguished practitioner in the federal antitrust field long before he took the bench, dissented in the Illinois Appellate case, 78 Ill.App.3d 746, 33 Ill.Dec. 501, 396 N.E.2d at 1234. Justice Simon's opinion urged an approach to Illinois law closely related to principles of federal antitrust jurisprudence. But his inability to persuade his colleagues does not of course convert their majority holding into a decision under the federal laws—a decision they had no jurisdiction and did not purport, to make.

■ 3. As for the Academy's claim that there are no adequate allegations of a "group boycott," the allegations just referred to are plainly sufficient to overcome the Academy's motion to dismiss.

■ 4. There is some limited case support for the Academy's argument that the Complaint fails adequately to allege a conspiracy. Several decisions involving ordinary business corporations have held that antitrust claims cannot be premised on a "conspiracy" between such a corporation and its own officers. Those decisions are of course distinguishable from the situation involving an association (an entity separate from its constituent members); but one decision (*Hatley v. American Quarterhorse Association*, 552 F.2d 646, 654 n.7 (5th Cir. 1977)) has extended that concept to a *trade* association. In the opinion of this Court, that analysis cannot fairly apply to an association such as the Academy, and this Court declines to follow *Hatley*. Where the necessary anticompetitive allegations are present, the very fact that an association of competitors is involved and enforces its activities by by-laws or similar internal means is itself sufficient to ground an antitrust complaint. As then District Judge (now Circuit Judge) Harlington Wood, Jr. said in *McCreery Angus Farms v. American Angus Ass'n*, 379 F.Supp. 1008, 1017 (S.D.Ill.1974), aff'd by unpublished order 506 F.2d 1404 (7th Cir. 1974):

> The Defendants' contention is not well taken. The requisite agreement needed to bring the activity in question within the ambit of the Sherman Act is provided by the very bylaw under which the Defendants are alleged to have acted. In *Silver v. New York Stock Exchange*, 373 U.S. 341, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963), the Supreme Court found the by-laws of the Exchange pursuant to which the Plaintiffs' direct wire privileges were suspended provided the sufficient "agreement". As stated in one comment, "The mere involvement of an association generally would provide the requisite element of combination or conspiracy."

This is but one of a veritable host of cases, including *Silver v. New York Stock Exchange*, 373 U.S. 341, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963), that have found the requisite "conspiracy" and sustained antitrust claims against associations alleged to have engaged in exclusionary or other anticompetitive practices.

5. Much the same analysis applies to reject the claim that "the Complaint merely alleges a unilateral refusal to deal." That claim reflects too narrow and formalistic—and unrealistic—a view of the Academy as a single entity distinct from its membership.

■ 6. Freedom of association concepts cannot serve as a protective mantle for the anticompetitive conduct alleged in the Complaint. *Associated Press v. United States*, 326 U.S. 1, 65 S.Ct. 1416, 89 L.Ed. 2013 (1945), though it involved a different type of antitrust violation, is of course the classic illustration of that proposition.

### Conclusion

Defendant Academy's motion to dismiss the Amended Complaint is denied, and the Academy is ordered to file its answer on or before September 24, 1980.

### APPENDIX A

8. Defendant, Academy, is the sole generally recognized organization of its kind in the orthopaedic surgical profession and freely holds itself out to be such. It is closely affiliated with the American Medical Association, which officially recognizes the Academy as the spokesman for all orthopaedists.

9. In turn, although the American Board of Orthopaedic Surgery (ABOS) certifies orthopaedic surgeons, the Academy was largely responsible for the formation of that certifying body and continues to be intimately involved with it through, among other things, interlocking boards of directors. All members of the board of directors of ABOS are also present or past members of the board of the Academy, and the Academy is empowered by the ABOS to

nominate the candidates for the latter's board.

10. The Academy is, in a word, a monopoly in its field, possessed of substantial power to control the market for orthopaedic surgical services, especially by denying access to any of the various subspecialty organizations of the practice.

10A. On information and belief, membership in the Academy is a requirement for membership in most of the above subspecialty organizations including, among others, the American Orthopaedic Foot Society and the American Orthopaedic Society for Sports Medicine.

11. Active fellowship in the Academy is a factor relied upon by hospitals in the granting of orthopaedic surgical privileges, by physicians in making referrals of patients' cases, by insurance companies in the setting of malpractice insurance premiums, by courts and other adjudicative panels in determining the expertise of orthopaedic surgeons whose testimony is offered as expert witnesses, and by aspiring orthopaedic surgeons choosing a clinic in which to practice.

11A. Members enjoy significant competitive advantages over nonmembers in regard to advancement, and particularly sustained, long-term advancement, in the orthopaedic surgical profession.

12. Conversely, rejection for Academy membership, which must be disclosed to hospitals where staff privileges are sought, to insurance companies whose liability coverage is sought, to other professional societies to which admission is sought, and to any court or similar authority in response to questions about an expert witness's qualifications, is a subject of suspicion and disgrace.